1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9           FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   BRUCE THORNS,                          No.  2:11-cv-01826 MCE DAD P
12              Plaintiff,
13        v.                                FINDINGS AND RECOMMENDATIONS
14   S. SHANNON, et al.,
15              Defendants.
16

17        Plaintiff is a California state prisoner proceeding pro se and in forma pauperis in this civil

18   rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated at the

19   Tallahatchie County Correctional Facility in Tutwiler, Mississippi.  The action proceeds on

20   plaintiff's First Amended Complaint.  Presently before the court is defendants' motion for

21   summary judgment.  For the reasons set forth below, the court recommends that the motion be

22   granted.

23   I.  Background

24        A.  Procedural Background

25        Plaintiff was previously incarcerated at California State Prison-Corcoran ("CSP-SAC").

26   In his First Amended Complaint ("FAC," ECF No. 46), plaintiff alleges that defendants

27   S. Shannon (Correctional Captain, CSP-SAC), J.A. Baker (Correctional Lieutenant, CSP-SAC),

28   and Tim Virga (former Warden, CSP-SAC) subjected him to cruel and unusual punishment under

1

1  the Eighth Amendment.  Plaintiff has alleged as follows.  Plaintiff was "placed . . . in a cell on a

2  modified lockdown program, with white paint on the outside of the windows so no adequate light

3  came through.  Plaintiff was not allowed out of his cell for outdoor exercise for 7 months."  (Id. at

4  3.)  Plaintiff has medical needs which require that he be permitted to exercise.  (Id.)  Plaintiff's

5  requests for the paint to be removed from his cell windows, to be allowed to exercise, and/or to be

6  placed in a different cell were repeatedly denied.  (Id. at 4.)  Plaintiff alleges that, due to the

7  inadequate lighting, he could not move about safely in his cell or read and write.  (Id. at 3.)

8  Plaintiff seeks injunctive relief and damages.

9       On October 31, 2013, defendants filed an answer to plaintiff's FAC.  (ECF No. 52.)  On

10  November 4, 2013, plaintiff notified the court that he had been transferred to the Tallahatchie

11  County Correctional Facility in Mississippi.  (ECF No. 54.)  The court subsequently issued a

12  discovery and scheduling order governing this action.  (ECF No. 56.)  Plaintiff appears to have

13  been able to conduct discovery.  For instance, on April 16, 2014, plaintiff filed a motion to

14  compel discovery responses (ECF No. 57), and on July 28, 2014, a reply to defendants'

15  opposition to the motion to compel (ECF No. 62).

16       On September 12, 2014, defendants filed a motion for summary judgment.  (ECF No. 66.)

17  On October 6, 2014, plaintiff filed a request for a forty-five day extension of time to file his

18  opposition, writing:

19       I, Bruce Thorns, declare:

20       […]

21       3. [O]n 9-17-14, I requested access to the Legal Library to answer
         the Defendants' Motion for Summary Judgment, and was denied
22       because the court did not give me a 30 day deadline to respond to
         the defendants.  See attached Exhibit A, the Priority Legal User
23       (PLU) Request and Declaration . . . .

24       4. That my access to the law library ha[s] been limited to 1 hour a
         week when the library is open, and I need more time to research all
25       the cases that the defendants have cited . . . .

26  (ECF No. 69.)  On October 20, 2014, the court granted plaintiff the requested forty-five day

27  extension of time to file and serve an opposition to defendants' pending motion for summary

28  judgment.  (ECF No. 70.)  However, plaintiff failed to meet the extended deadline.  Therefore, on

January 6, 2015, the court issued an order directing plaintiff to, within twenty-one days, file either

an opposition or statement of non-opposition to the pending motion for summary judgment, or

else face dismissal of the action for lack of prosecution.  (ECF No. 71.)  On January 27, 2015,

plaintiff filed a statement of non-opposition to defendants' motion for summary judgment.  (ECF

No. 72.)  Specifically, plaintiff  stated therein as follows:

> After reviewing the . . . summary judgment [motion] and
> considering the court[']s position on the matter, and local rules,
> further considering my current inability to gain access to the facility
> law library, I present to this court my statement of non-opposition.
> That I am without the proper resources to prosecute the case before
> this court to the full extent of the law.  Having said all of the above,
> my statement of non-opposition come[s] before the court with
> prejudice.  My current housing placement in the state of Mississippi
> has placed a burden on my ability to gain access to an up and
> running adequate legal law library.  I have no funds to mail out
> legal work, and unlike California, the state of Mississippi do[es] not
> recognize indigent inmates.

(Id. at 1-2.)

The undersigned finds plaintiff's protests about his inability to prosecute this action to be

unconvincing.  Plaintiff's earlier filings with this court since his transfer to Mississippi evince an

ability to conduct discovery and make substantive legal filings from his current facility.  Plaintiff

also averred to the court that, with an order granting him a forty-five day extension of time, he

would be able to gain sufficient access to the prison law library to prepare an opposition.  The

court issued the requested order extending time, and ultimately, plaintiff had more than four

months from the filing of defendants' summary judgment motion to prepare an opposition.  In

addition, defendants served plaintiff with the notice required under Rand v. Rowland, 154 F.3d

952, 962-63 (9th Cir. 1998) (en banc), which provides in pertinent part:

> Generally, summary judgment must be granted when there is no
> genuine issue of material fact—that is, if there is no real dispute
> about any fact that would affect the result of your case, the party
> who asked for summary judgment is entitled to judgment as a
> matter of law, which will end your case.  When a party you are
> suing makes a motion for summary judgment that is properly
> supported by declarations (or other sworn testimony), you cannot
> simply rely on what your complaint says.  Instead, you must set out
> specific facts in declarations, depositions, answers to
> interrogatories, or authenticated documents, as provided in Rule
> [56(c)], that contradict the facts shown in the defendant's

1
2
3

> declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.

4   (ECF No. 66-4 at 2.)  If plaintiff disputed one or more material facts that defendants rely upon in

5   their motion, he could have filed a declaration setting forth contradictory facts, and thereby

6   demonstrated the existence of a genuine issue of material fact.  Alternately, plaintiff could have

7   filed a declaration with the court setting forth specific facts demonstrating that his law library

8   access was insufficient to prepare an opposition to the motion, and requesting the additional time

9   that he would need as a result.  Instead, plaintiff has chosen to make only general allegations

10   about a lack of resources and the inadequacy of the law library.  These allegations are insufficient

11   to convince the court that plaintiff could not address the merits of defendants' summary judgment

12   motion, particularly in light of his earlier, discovery-related filings with the court, as well as the

13   content of his October 6, 2014 declaration.  Without minimizing the difficulties faced by inmates

14   who are housed in out-of-state facilities, the court concludes that plaintiff had an adequate

15   opportunity to oppose defendants' summary judgment motion and failed to do so.  Accordingly,

16   the court will turn to defendants' motion.

17       B.  Factual Background

18       In support of their motion, defendants have filed a statement of undisputed facts ("DSUF,"

19   ECF No. 66-2), supported by a number of evidentiary exhibits (ECF No. 66-3).  The evidence

20   submitted by defendants establishes the following.

21       1.  At all relevant times, plaintiff was an inmate at CSP-SAC.  (DSUF 1.)

22       2.  At all relevant times, defendant T. Virga was the Warden at CSP-SAC.  (DSUF 3.)

23       3.  At all relevant times, defendant S. Shannon was a Correctional Captain on C-Facility
24          at CSP-SAC.  (DSUF 4.)

25       4.  At all relevant times, defendant J. Baker was a Correctional Lieutenant on C-Facility
26          at CSP-SAC.  (DSUF 5.)

27       5.  CSP-SAC is a Level IV prison that houses particularly violent and serious offenders.
28          (DSUF 6.)

4

6.  At all relevant times, plaintiff was housed in C-Facility, Block 8, Building 2, cell 20, lower bunk.  (DSUF 103.)

7.  Plaintiff is an admitted gang member, who belongs to the Crips disruptive group. (DSUF 2.)

8.  The term "disruptive group" includes any gang other than a prison gang, and as used by CDCR, generally refers to street gangs.  (DSUF 9.)

9.  The Crips are designated a disruptive group.  (DSUF 10.)

10. Normal programming means that inmates attend work and education programs; they have regular visiting, canteen and telephone privileges; can attend religious services and the law library; and are released to the yard for recreation in large groups according to their yard schedule.  (DSUF 15.)

11. A modified program typically involves the suspension of various programs or services for a specific group of inmates, or in a specific portion of a facility.  Generally, during a modified program, work, education, and outdoor exercise might be suspended; telephone, canteen, or visiting privileges might be restricted, and meals might be delivered to the inmates' cells rather than being served in the dining hall.  These programs and privileges are restored incrementally as the administration deems appropriate.  (DSUF 16.)

12. Inmates may be placed on a modified or restricted program, or "lockdown," following a serious incident involving violence.  (DSUF 18, 20, 21)

13. A modified program may continue for an extended period of time if there is a likelihood of continued violence.  (DSUF 21.)

14. The number of inmates released from lockdown is gradually increased until all inmates are returned to normal programming.  If there is any serious incident during the release process, the lockdown is reinstituted.  (DSUF 22-24.)

15. In March 2010, an African-American inmate stabbed a Northern Hispanic inmate in CSP-SAC's C-Facility, where plaintiff was housed.  (DSUF 29, 103.)

5

16. Prison officials investigated the matter and were told that Northern Hispanic inmates did not intend to retaliate, both because the attacker was known to be mentally ill, and because the Northern Hispanics received assurances that the Crips would deal with the attacker.  (DSUF 30.)

17. After the assault, the attacker housed in administrative segregation and assigned to single-cell status, preventing other Crip inmates from gaining access to him.  (DSUF 31.)

18. On September 7, 2010, two Northern Hispanic inmates stabbed an African-American inmate.  (DSUF 32.)

19. Based on the circumstances of the assault, prison officials determined that the attackers had attempted to murder the African-American inmate.  (DSUF 35.)

20. After the September 7, 2010 incident, prison officials heard rumors from inmates that, because the attacker from the March 2010 incident had not been dealt with, the Northern Hispanics took retaliatory action.  (DSUF 36.)  Prison officials were never able to substantiate this account.  (Declaration of Warden Virga, ECF No. 66-3 at ¶ 9.)

21. In response to the September 7, 2010 incident, all African-American and Hispanic inmates in C Facility, cell blocks 5-8, were placed on a modified program.  (DSUF 41.)

22. The restrictions instituted included no visitation privileges, controlled and restrained showers, all escorts in restraints, and no simultaneous movement of African-American and Northern Hispanic inmates within the facility.  (DSUF 44.)

23. The restricted program did not affect meals, as all inmates at CSP-SAC are fed in their cells even under normal programming.  (DSUF 45.)

24. Subsequent investigation into the September 7, 2010 incident suggested the existence of ongoing hostilities between African-American and Northern Hispanic inmates.  (DSUF 46-60, 64.)

25. On November 6, 2010, as a result of staff error, a door was left open which allowed four African-American inmates to engage in a physical altercation with two Northern

6

Hispanic inmates.  (DSUF 62.)

26. On December 1, 2010, two Northern Hispanic inmates stabbed an African-American Crip inmate in C-Facility, Block 7.  (DSUF 66.)

27. In late December 2010, a confidential source informed prison officials of a decrease of tensions between Northern Hispanic inmates and African-American inmates not affiliated with Crips or Bloods.  (DSUF 80.)

28. Between December 2010 and April 2011, lower-risk African-American inmates were released to normal programming.  By April 12, 2011, the only inmates remaining on a modified program were Northern Hispanics, and inmates suspected of being associates of Crips or Bloods.  (DSUF 81-82, 86.)

29. During this period, prison officials received conflicting information about the state of relations between African-American and Northern Hispanic inmates.  (DSUF 83.)

30. On April 28, 2011, there was a fight between a Crip inmate and a Northern Hispanic inmate.  (DSUF 90.)

31. On June 3, 2011, prison officials planned to release two African-American inmates affiliated with Crips or Bloods and two Northern Hispanic inmates to the yard at the same time.  But before the release could occur, one of the Northern Hispanic inmates was discovered to have a stabbing weapon concealed in his rectum.  (DSUF 92.)

32. Subsequent investigation and incidents suggested that Northern Hispanic inmates remained unwilling to program peacefully with Crips and Bloods, but that Crips and Bloods were willing to program peacefully.  (DSUF 93-96.)

33. Accordingly, Crips and Bloods were gradually released to more normal programming. (DSUF 96.)

34. Plaintiff, who was identified as belonging to a high-risk category, was returned to normal programming on July 5, 2011.  (DSUF 98.)

35. In August 2011, all Northern Hispanic inmates in C-Facility were transferred to other institutions, and replaced with other Northern Hispanic inmates.  (DSUF 97.)

36. On September 6, 2011, all inmates on C-Facility were returned to normal

programming.  (DSUF 97.)

37. The windows of several cells at CSP-SAC are painted with a frost because they face the staff parking lots.  The frost is a cloudy film that prevents inmates from seeing into the parking lots and pathways.  Without this frost, inmates would have visual access to staff parking lots, and would be able to gather the license plate numbers of staff members.  In addition, the window frost prevents inmates from knowing exactly what time specific staff members arrive at the prison.   (DSUF 101.)

38. The frost used at CSP-SAC is an opaque coating that prevents the inmate from seeing outside, but does not does not completely darken the cell, and allows diffused sunlight to enter through the window.  (DSUF 102.)

39. The Correctional Plant Manager II at CSP-Sacramento tested the amount of light coming into the cell Plaintiff occupied during the lockdown.  That cell had frosted coating on the window.  The testing showed that the cell has illumination of 27 lumens, which is over the required standard of between 20 and 24 lumens.  (DSUF 103.)

40. Defendant Baker was not a part of CSP-SAC's executive staff, did not have the authority to impose, modify, or end the modified program, and did not determine the schedule by which inmates were returned to normal programming.  (DSUF 100.)

II.  Standards

  A.  Standard re: summary judgment under Rule 56

  Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

1  (including those made for purposes of the motion only), admissions, interrogatory answers, or

2  other materials" or by showing that such materials "do not establish the absence or presence of a

3  genuine dispute, or that the adverse party cannot produce admissible evidence to support the

4  fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at

5  trial, "the moving party need only prove that there is an absence of evidence to support the

6  nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see

7  also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate

8  time for discovery and upon motion, against a party who fails to make a showing sufficient to

9  establish the existence of an element essential to that party's case, and on which that party will

10  bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof

11  concerning an essential element of the nonmoving party's case necessarily renders all other facts

12  immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as

13  whatever is before the district court demonstrates that the standard for entry of summary

14  judgment, . . ., is satisfied." Id. at 323.

15       If the moving party meets its initial responsibility, the burden then shifts to the opposing

16  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

17  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

18  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

20  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

21  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

22  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

23  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

24  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

25  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

26  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

27       In the endeavor to establish the existence of a factual dispute, the opposing party need not

28  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

1   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

2   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

3   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

4   Matsushita, 475 U.S. at 587 (citations omitted).

5        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

6   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

7   party." Walls v. Central Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the

8   opposing party's obligation to produce a factual predicate from which the inference may be

9   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

10  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

11  party "must do more than simply show that there is some metaphysical doubt as to the material

12  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

13  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

14  omitted).

15       Defendants have filed a proof of service (ECF No. 66-5) indicating that, on September 12,

16  2014, they served plaintiff with a copy of the model warning from Rand, 154 F.3d at 962-63,

17  advising plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal

18  Rules of Civil Procedure.

19       B.  Standard re: Eighth Amendment claim

20       The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment

21  prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v.

22  Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to

23  prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that

24  objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

25  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

26  Seiter, 501 U.S. 294, 298-99 (1991).

27       The Eighth Amendment's prohibition against cruel and unusual punishment "protects

28  prisoners not only from inhumane methods of punishment but also from inhumane conditions of

10

1    confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison

2    administrators generally have broad discretion in determining whether to declare emergencies and

3    impose "lockdowns" to control institutional disturbances, the conditions imposed during the

4    lockdown may constitute cruel and unusual punishment under the Eighth Amendment. See

5    Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) (denial of outdoor exercise may give

6    rise to Eighth Amendment violation even in response to emergency conditions).

7         In order to establish that the conditions of confinement satisfy the objective component of

8    the Eighth Amendment analysis, prisoner plaintiffs must demonstrate that prison officials'

9    conduct deprived them of "the minimal civilized measure of life's necessities." Farmer v.

10   Brennan, 511 U.S. 825, 834 (1994).  To meet this standard, plaintiffs must show that "society

11   considers the risk that the prisoner complains of to be so grave that it violates contemporary

12   standards of decency to expose *anyone* unwilling to such a risk." Neal v. Shimoda, 131 F.3d 818,

13   833 (9th Cir. 1997) (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993) (emphasis in

14   original)).

15        Establishing that the conditions of confinement satisfy the subjective component of the

16   Eighth Amendment analysis requires a two-part inquiry.  First, plaintiffs must show that prison

17   officials were aware of a "substantial risk of serious harm" to their health or safety.  Farmer, 511

18   U.S. at 837.  Second, plaintiffs must show that prison officials had no reasonable justification for

19   the deprivation, despite their awareness of the risk of harm.  Id. at 844 ("[P]rison officials who

20   actually knew of a substantial risk to inmate health or safety may be found free from liability if

21   they responded reasonably.")

22        "Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by

23   the Eighth Amendment." Hoptowit v. Spellman, 753 F.3d 779, 783 (9th Cir. 1985) (upholding

24   district court's finding of an Eighth Amendment violation based upon prison lighting "so poor

25   that it was inadequate for reading and caused eyestrain and fatigue and hindered attempts to

26   insure that basic sanitation was maintained.")  The Eighth Amendment "has been recognized as

27   requiring a minimum level of illumination in jails so that normal activities of life may be

28   conducted." Martino v. Carey, 563 F. Supp. 984, 999 (D. Or. 1983).

1      Outdoor exercise is a basic human need protected by the Eighth Amendment, and the

2  denial of outdoor exercise may violate the Constitution, depending on the circumstances.

3  Richardson v. Runnels, 594 F.3d 666 (9th Cir. 2010); Norwood v. Vance, 591 F.3d 1062, 1070

4  (9th Cir. 2010).  While the "temporary denial of outdoor exercise with no medical effects is not a

5  substantial deprivation," Norwood, 591 F.3d at 1070 (internal quotation and citation omitted),

6  when an inmate alleges the denial of constitutionally adequate outdoor exercise, the inquiry is fact

7  specific.  In determining whether a deprivation of outdoor exercise is sufficiently serious, the

8  court must consider the circumstances, nature, and duration of the deprivation.  Spain v.

9  Procunier, 600 F.2d 189, 199 (9th Cir. 1979).

10  III.  Analysis

11      Plaintiff has filed a notice of his non-opposition to defendants' summary judgment

12  motion.  Such a filing is provided for by Local Rule 230(l), which provides in pertinent part:

13          **Motions in Prisoner Actions.**   All motions . . . filed in actions
        wherein one party is incarcerated and proceeding in propria persona

14          shall be submitted upon the record without oral argument unless
        otherwise ordered by the Court.  [. . .]  Opposition, if any, to the

15          granting of the motion shall be served and filed by the responding
        party not more than twenty-one (21) days after the date of service

16          of the motion.  A responding party who has no opposition to the
        granting of the motion shall serve and file a statement to that

17          effect, specifically designating the motion in question

18  Local R. 230(l) (emphasis in original).

19      It is the practice of courts in the Eastern District of California to grant summary judgment

20  to the moving party if the non-moving party files an affirmative statement of non-opposition.

21  See, e.g., Estate of Byrd v. Teater, No. 1:06-cv-00900-OWW-GSA, 2008 WL 4104309, at *1

22  (E.D. Cal. Sep. 2, 2008); Infa-Lab, Inc. v. KDS Nail Int'l, No. 2:07-cv-01270-WBS-EFB, 2009

23  WL 161197, at *1 (E.D. Cal. Jan. 22, 2009); Ransom v. Johnson, No. 1:05-cv-00086-OWW-

24  GSA, 2010 WL 1791128, at *1 (E.D. Cal. May 3, 2010); Quock v. Staples, Inc., No. 2:10-cv-

25  00199-GEB-JFM, 2011 WL 2198694, at *1,3 (E.D. Cal. Jun. 6, 2011); and Hunter v.

26  Youngblood, No. 1:07-cv-01126-AWI-SKO, 2014 WL 1255909, at *1 (E.D. Cal. Mar. 25, 2014).

27  See also Keen v. Am. Home Mortg. Servicing, Inc., No. 2:09-cv-001026-FCD-KJM, 2010 WL

28  /////

1    624306, at *1 (E.D. Cal. Feb. 10, 2010) (treating plaintiff's filing of a statement of non-

2    opposition to a motion to dismiss as a voluntary dismissal under Fed. R. Civ. P. 41(a)).

3          Out of an abundance of caution, the court has reviewed defendants' motion for summary

4    judgment.  Having done so, the court concludes that, in the absence of contradictory evidence

5    proffered by plaintiff, defendants have carried their burden under Federal Rule of Civil Procedure

6    56.  To wit:

7    •   Defendants have submitted admissible evidence demonstrating that defendant Baker

8        "had no authority to impose, modify, or end the modified program" (ECF No. 66-1 at

9        26), and therefore lacked the authority to provide plaintiff with adequate lighting

10       and/or exercise.  It therefore appears that summary judgment should be entered in

11       defendant Baker's favor.

12   •   Defendants have submitted admissible evidence demonstrating that prison officials

13       had a reasonable justification for depriving those inmates who belonged to the Crips

14       disruptive group and were housed in CSP-SAC's C-Facility (a category which

15       included plaintiff) of outdoor exercise from September 10, 2010 to July 5, 2011, the

16       date on which plaintiff was returned to normal programming.  Under Farmer, 511 U.S.

17       at 844, it therefore appears that defendants are entitled to summary judgment on

18       plaintiff's Eighth Amendment claim based on deprivation of outdoor exercise.  See id.

19       ("[P]rison officials who actually knew of a substantial risk to inmate health or safety

20       may be found free from liability if they responded reasonably.").

21   •   Defendants have submitted admissible evidence demonstrating that prison officials

22       had a reasonable justification for covering the window of plaintiff's cell with frost.

23       Again, under Farmer, 511 U.S. at 844, it appears that defendants are entitled to

24       summary judgment on plaintiff's Eighth Amendment claim based on deprivation of

25       adequate lighting.

26         Having concluded that summary judgment ought to be entered in defendants' favor on

27   these claims, the court declines to reach the question of whether defendants are entitled to

28   qualified immunity from plaintiff's lawsuit herein.

1    IV.  Conclusion

2         For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that:

3         1.  Defendants' motion for summary judgment (ECF No. 66) be granted; and

4         2.  This action be closed.

5         These findings and recommendations are submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7    after being served with these findings and recommendations, plaintiff may file written objections

8    with the court.  The document should be captioned "Objections to Findings and

9    Recommendations."   Plaintiff is advised that failure to file objections within the specified time

10   may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

11   Cir. 1991).

12   Dated:  April 24, 2015

13

14                                    _____
                                      DALE A. DROZD
15                                    UNITED STATES MAGISTRATE JUDGE

16   DAD:10
     thor1826.52.rev

17

18

19

20

21

22

23

24

25

26

27

28

                                      14